IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THE ESTATE OF JEREMIAH SIPES, ) <br> by and through Administrator HEATHER ) <br> SIPES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) | | 1:14-cv-466 |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Heather Sipes ("Plaintiff"), as the administrator of the Estate of Jeremiah Sipes, brings this wrongful death action against the United States of America ("Government" or "United States"), under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1) (2012). Before the Court is the Government's Motion for Summary Judgment. (ECF No. 27.) For the reasons that follow, the Court grants the motion.

**I.  FACTUAL BACKGROUND**

Fort Bragg ("Ft. Bragg"), a United States military base located in North Carolina, contains over 487 miles of trails, (ECF No. 28-5 ¶ 16). In 2005, a private organization contacted officials at Ft. Bragg about creating a public recreational trail there. (*Id.* ¶ 10.) In 2006, the trail opened as the All American Trail (the "trail"). (*Id.* ¶ 14.) Ft. Bragg advertises the trail as open to soldiers and the general public for hiking, running, and bicycling. (ECF No. 1 ¶¶ 2, 12; ECF No. 5 ¶¶ 2, 12.) Ft. Bragg also permits deer hunting at various locations

adjacent to the trail. (ECF No. 1 ¶ 3, ECF No. 5 ¶ 3.) Hunting is overseen by Ft. Bragg's Wildlife Branch ("FBWB"). (ECF No. 1 ¶ 15, ECF No. 5 ¶ 15.) FBWB policy restricts the number of hunters allowed in specific areas at any given time by requiring hunters to check in and out before and after hunting. (ECF No. 1 ¶¶ 3, 28; ECF No. 5 ¶¶ 3, 28.)

On January 1, 2011, Jeremiah Sipes ("Sipes"), a captain in the United States Army who was stationed at Ft. Bragg, went to the trail for a run. (ECF No. 1 ¶¶ 17–18.) He parked his vehicle and entered the trail at the Vass Road trailhead, which is one of two trailheads at the trail.[1] (*Id.* ¶¶ 21–22.) Around 10 a.m., Sipes began running on the trail. (ECF No. 1 ¶ 24; ECF No. 5 ¶ 24.) At the same time, Allen Thompson ("Thompson"), who had earlier checked in with FBWB, was hunting for deer on land adjacent to the trail. (ECF No. 1 ¶¶ 25–26; ECF No. 5 ¶¶ 25–26.) Four miles into his run, Sipes was shot by Thompson, who mistakenly believed he was a deer. (ECF No. 1 ¶ 29; ECF No. 28-15 at 2.) Sipes died at the scene of the accident. (ECF No. 31-23 at 2.)

On June 9, 2014, Plaintiff commenced this action, asserting one claim of "Negligence, Gross Negligence, Recklessness and Intentional Acts by the United States of America Leading to the Death of Jeremiah Sipes." (ECF No. 1 at 8.) The Government moves for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] "A trailhead is a point at which a trail begins, often having rest rooms, maps, sign posts and distribution centers for informational brochures about the trail and its features, and parking areas for vehicles and trailers." (ECF No. 1 ¶ 21; ECF No. 5 ¶ 21.)

56(a). A fact is "material" if it might affect the outcome of the litigation, and a dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the nonmoving party bears the burden of proof on an issue, the moving party is entitled to judgment as a matter of law if the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (noting that a "complete failure of proof" on an essential element of the case renders all other facts immaterial).

The party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. To defeat summary judgment, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. The nonmoving party must support its assertions by citing to particular parts of the record, such as affidavits, depositions, answers to interrogatories, and admissions on file. Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at 324.

The role of the court is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. A genuine issue for trial exists only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). When reviewing a motion for summary judgment, the court must "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523

(4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

**III. DISCUSSION**

The United States, as a sovereign entity, is immune from lawsuits unless it consents to be sued. *United States v. Dalm*, 494 U.S. 596, 608 (1990). Under the FTCA, the United States waives sovereign immunity for the negligence of federal employees. *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001). In particular, the United States may be sued for "personal injury or death" caused by a negligent act or omission, or a wrongful act or omission, of its employee if such act or omission took place within that person's scope of employment and "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place" where the act or omission occurred. 28 U.S.C. § 1346(b)(1). The Supreme Court has observed that reference to the "law of the place" means law of the state in which the negligent or wrongful conduct occurred. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 478 (1994). It is undisputed that the United States has waived its immunity in this case and that the alleged act or omission occurred in North Carolina. Thus, North Carolina law governs Plaintiff's premises liability claim. (*See* ECF No. 31 at 1.)

**A. Premises Liability Law in North Carolina**

The North Carolina Supreme Court has held that landowners owe a "duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors." *Nelson v. Freeland*, 349 N.C. 615, 632, 507 S.E.2d 882, 892 (1998). "A lawful visitor is one who is on the premises with the landowner's permission or by legal right." *Holcomb v.*

4

*Colonial Assocs., L.L.C.*, 358 N.C. 501, 510, 597 S.E.2d 710, 716 (2004). This permission may be express or implied. *Id.* Implied permission to enter another's land may arise "when a visitor adheres to the normal customs of the community unless a landowner expresses specific opposition to those customs." *Id.* To determine whether an individual is a lawful visitor, courts evaluate "the reasonableness of the visitor's entry, with due regard given 'to customs prevailing in the community.'" *Id.* (quoting *Smith v. VonCannon*, 283 N.C. 656, 662, 197 S.E.2d 524, 529 (1973)). Despite owing a duty of reasonable care to lawful visitors, landowners are not "insurers of their premises." *Nelson*, 349 N.C. at 632, 507 S.E.2d at 892. Thus, unlike the duty owed to a lawful visitor, a landowner only owes a trespasser a duty to "refrain from the willful or wanton infliction of injury." *Id.* at 618, 507 S.E.2d at 884. This is so because "[a] trespasser is one who enters another's premises without permission or other right." *Worthy v. Ivy Cmty. Ctr., Inc.*, 198 N.C. App. 513, 516, 679 S.E.2d 885, 887 (2009) (quoting *Nelson*, 349 N.C. at 617, 507 S.E.2d at 884).

North Carolina also has a Recreational Use Statute ("NCRUS"), which states that its purpose is "to encourage owners of land to make land and water areas available to the public at no cost for educational and recreational purposes by limiting the liability of the owner to persons entering the land for those purposes." N.C. Gen. Stat. § 38A-1. The statute provides, in pertinent part, that "an owner of land who either directly or indirectly invites or permits without charge any person to use such land for educational or recreational purposes owes the person the same duty of care that he owes a trespasser." *Id.* § 38A-4(a). As such, a landowner owes a duty to refrain from inflicting willful or wanton injury to an individual using his property for recreational purposes and without charge. *See Fesmire v. United States*, 9

F. App'x 212, 215 (4th Cir. 2001) (per curiam) (applying North Carolina law). However, if the landowner directly invites an individual onto his land, he "shall inform [the] direct invitee[] of artificial or unusual hazards of which the owner has actual knowledge." N.C. Gen. Stat. § 38A-4(a).

### B. Sipes' Legal Status on Trail at Time of Accident

To determine the duty the Government owed to Sipes, the Court must consider Sipes' legal status on the trail at the time of the accident. The Government argues that Sipes was either a trespasser or a recreational user of the trail under NCRUS. (ECF No. 28 at 2.) Under either scenario, Ft. Bragg would have owed Sipes a duty to refrain from willfully or wantonly causing him harm.

As stated above, a trespasser is a person who enters another's land without permission or other right. *Worthy*, 198 N.C. App. at 516, 679 S.E.2d at 887. Whether Sipes was a trespasser on the day of his death is measured by the reasonableness of his entry and prevailing customs in the community. *See Holcomb*, 358 N.C. at 510, 597 S.E.2d at 716. This is an objective standard. *See* 62 Am. Jur. 2d *Premises Liability* § 94.[2] Here, the record contains evidence demonstrating that: (1) Ft. Bragg advertised the trail as open to soldiers and the general public; (2) not only was Sipes, who previously used the trail, unaware that the trail was closed due to hunting season, but a number of other individuals who frequently used the trail also did not know that the trail was closed during hunting season, (*see* ECF Nos. 31-12

---

[2] North Carolina state courts have cited sections of the *American Jurisprudence* on issues involving premises liability. *See, e.g.*, *Worthy*, 198 N.C. App. at 518, 679 S.E.2d at 888 (citing 62 Am Jur. 2d *Premises Liability* § 121 (2009)); *Lorinovich v. K Mart Corp.*, 134 N.C. App. 158, 162, 516 S.E.2d 643, 646 (1999) (citing 62 Am. Jur. 2d *Premises Liability* § 147 (1990)).

6

¶¶ 5–6, 31-15 ¶¶ 6–7, 31-16 ¶ 5, 31-17 ¶¶ 9, 13–14, 31-18 ¶¶ 9–11, 15); and (3) Ft. Bragg's investigation into the shooting death of Sipes noted deficiencies in informing the public of the trail closure during hunting season,³ (ECF No. 31-28 at 3). *See* 62 Am. Jur. 2d *Premises Liability* § 123 ("As a general rule, the owner or occupant of property which has previously been used for a purpose justifying persons in entering it, but which has ceased to be used for that purpose, is liable for its unsafe condition to such persons, if the latter enters it under the justifiable assumption that it is still being used for that purpose. In such a case the owner or occupant is under an obligation to give express notice thereof by signs or otherwise . . . ."). The Court concludes based on the evidence outlined herein that there is a genuine issue of material fact with respect to whether Sipes was a trespasser on the day of the accident.

The Court next examines whether NCRUS is triggered under the circumstances of this case. Plaintiff asserts that NCRUS does not apply because Ft. Bragg believed the trail was closed. (ECF No. 31 at 17.) As such, Plaintiff claims that Sipes was a lawful visitor and that Ft. Bragg owed him "a duty to eliminate the hazard, or to warn thereof." (*Id.* at 16.)

"The threshold inquiry in applying a recreational use statute is whether 'the plaintiff's purpose in entering the property was recreational.'" *Estate of Purkey v. United States*, 299 F. Supp. 2d 539, 542 (W.D.N.C. 2004) (quoting *Chance v. United States*, 168 F.3d 498 (unpublished table decision), 1999 WL 89109, at *1 (9th Cir. 1999)). Here, there is little question that Sipes' use of the property was recreational and was without charge, irrespective

---

³ In September 2011, Ft. Bragg issued a report of its findings and recommendations. (ECF No. 31-28.) The report found that a critical factor in Sipes' death was "[t]he apparent failure to effectively mark the All American Trail as closed during hunting season" and that this "meant that [Captain] Sipes was unaware of the increased risk he was taking by running in this area." (ECF No. 31-28 at 3.)

7

of his status as a trespasser or lawful visitor.  In *Fesmire*, the plaintiff's decedent, a passenger in a vehicle being driven on Navy property, suffered fatal injuries when the vehicle accidentally drove down a boat ramp and into the water.  9 F. App'x at 213.  The plaintiff argued that its decedent "was not a trespasser because her use of the property occurred with the implied knowledge of the United States, which it contend[ed] amounts to an implicit invitation to use the property."  *Id.* at 214.  Applying North Carolina law, the Fourth Circuit stated that even if the plaintiff was correct, the decedent's "use of the property was recreational, which mean[t] that the duty owed her was the same duty to refrain from willful and wanton injury that is due a trespasser."  *Id.*

Plaintiff, however, maintains that "it would be an anomalous misapplication of [NCRUS] to extend it here, where the trail was closed."[4]  (ECF No. 31 at 18.)  Although Plaintiff has not cited any North Carolina cases in support of her position, she relies on *Nelson v. United States*, 20 F. Supp. 3d 1108 (D. Colo. 2014), which is on appeal before the Tenth Circuit following a bench trial in the district court.  In *Nelson*, a bicyclist was injured on a path on property owned by the United States Air Force Academy and thereafter brought suit under the FTCA against the United States.  *Id.* at 1115, 1117.  As in this case, the court considered arguments by the United States that Colorado's recreational use statute shielded it from liability.  *See id.* at 1130, 1134–35.  The court rejected these arguments.  In

---

[4] Plaintiff appears to acknowledge that, if the trail was closed, such a position would appear to support the Government's argument that Sipes was a trespasser rather than a lawful visitor. (*See* ECF No. 31 at 18.)  However, Plaintiff asserts that "one can be a lawful visitor at common law without being an invitee for purposes of the recreational use statute, for the common law and [NCRUS] apply wholly different criteria." (*Id.*)  Specifically, Plaintiff asserts that "the applicability of the [recreational use statute] hinges upon a subjective factor, i.e., the landowner's actual intent; whereas, at common law, it depends on an objective one, i.e., the owner's apparent consent." (*Id.*)

8

doing so, the court stated that "it is the landowner's actions and intent that should be looked at in determining whether it directly or indirectly invited or permitted persons to use its land for recreational purposes." *Id.* at 1133. Noting that there was no evidence that the defendant intended the path to be used for recreational purposes and "that it considered people who used the path to be trespassers and unauthorized on its property," the court held that the recreational use statute did not apply. *Id.* at 1134.

Unlike the landowner in *Nelson*, Ft. Bragg created the trail and intended for it to be used for recreational purposes. The defendant in *Nelson* did nothing to maintain the path and did not take any affirmative steps to make the trail available to the public for recreation. That Ft. Bragg believed that it had closed or intended to close the trail for hunting season a few months out of the year does not alter the fact that Ft. Bragg offered the trail for a recreational purpose and that Sipes and others in the community used the trail for that purpose. *See Holden v. Schwer*, 495 N.W.2d 269, 274 (Neb. 1993) ("[A] landowner need only allow some members of the public, on a casual basis, to enter and use his land for recreational purposes to enjoy the protection of the [Nebraska Recreational Liability Act]."); *Morales v. Coram Materials Corp.*, 853 NY.S.2d 611, 617 (N.Y. App. Div. 2008) ("Where property is suitable for recreational use at most times, but is temporarily unsuitable on the date of a plaintiff's accident, the immunity of [the recreational use statute] applies to the landowner, as the issue of suitability is measured against how the property generally exists rather than upon temporary hazards that exists on a particular day."). The Court thus rejects Plaintiff's argument that temporarily closing the trail defeats application of the recreational use statute in this case.

A contrary result would not only be inconsistent with *Fesmire's* focus on the party's use of the land in determining application of NCRUS, but it would also be inconsistent with the purpose of the statute itself, *i.e.*, to encourage landowners to make their property available to the public for educational and recreational purposes *by limiting their liability to persons entering the land for those purposes*. *See Estate of Purkey*, 299 F. Supp. 2d at 542 (explaining that "there is no duty to warn trespassers or indirect invitees of artificial or unusual hazards" and "[t]o find otherwise would render the recreational use statute meaningless" (quoting *Fesmire*, 9 F. App'x at 215)). "Owners would be encouraged to close all of their lands to all purposes if they feared that a partial restriction covering particular activities would actually expose them to greater, rather than lesser, liability." *Verdoljak v. Mosinee Paper Corp.*, 547 N.W.2d 602, 606 (Wis. 1996); *see also Domingue v. Stanley*, 784 So.2d 844, 847–48 (La. Ct. App. 2001) (explaining the "anomalous effect" that would result if a landowner had a greater duty to a person who enters his land for recreational purposes without his consent than to a person who enters his land for recreational purposes with his permission).

Because the Court finds that NCRUS applies in this case, to defeat summary judgment, Plaintiff must produce evidence that Ft. Bragg willfully or wantonly caused injury to Sipes.

10

### C. Wanton Conduct[5]

Plaintiff argues that the record supports a finding that Ft. Bragg engaged in wanton conduct in causing the death of Sipes because it created the hazard, knew of its danger, yet encouraged others to enter by misleading them. (ECF No. 31 at 23.)

According to the North Carolina Supreme Court, "[t]he concept of willful, reckless and wanton negligence inhabits a twilight zone which exists somewhere between ordinary negligence and intentional injury." *Pleasant v. Johnson*, 312 N.C. 710, 714, 325 S.E.2d 244, 247 (1985). "An act is wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others." *McCauley v. Thomas*, — N.C. App. —, 774 S.E.2d 421, 426 (2015) (quoting *Boyd v. L.G. DeWitt Trucking Co.*, 103 N.C. App. 396, 402, 405 S.E.2d 914, 918 (1991)). In other words, it is a purposeful act done with knowledge that it is a breach of duty to others, *i.e.*, a conscious or reckless disregard for the safety of others.[6] *Ray v. N.C. Dep't of Transp.*, 366 N.C. 1, 13, 727 S.E.2d 675, 684 (2012);

---

[5] Plaintiff admitted that Ft. Bragg did not willfully inflict injury upon Sipes. (*See* ECF No. 28 at 2; ECF No. 31 at 22.) Thus, the issue is wantonness.

[6] At times, North Carolina courts have used "'willful and wanton conduct' and 'gross negligence' interchangeably to describe conduct that falls somewhere between ordinary negligence and intentional conduct." *Yancey v. Lea*, 354 N.C. 48, 52, 550 S.E.2d 155, 157 (2001); *see McCauley*, 774 S.E.2d at 426 ("Gross negligence is willful and wanton negligence."). Other times, North Carolina courts have defined gross negligence as something less than willful or wanton conduct. *See, e.g.*, *Cowan v. Brian Ctr. Mgmt. Corp.*, 109 N.C. App. 443, 448, 428 S.E.2d 263, 266 (1993) (treating gross negligence as something less than willful or wanton conduct "to give effect to the wording of the wrongful death statute"); *see also Lee v. CertainTeed Corp.*, No.5:13-CV-826-FL, 2015 WL 4526165, at *9 n.8 (E.D.N.C. July 27, 2015) ("Under North Carolina's punitive damages statute, it is clear that willful and wanton conduct is more culpable than gross negligence." (citing N.C. Gen. Stat. § 1D-5(7))). Although the relationship between these terms appears unclear at times, both parties agree that both gross negligence and wanton conduct are the same. (*See* ECF No. 28 at 15; ECF No. 31 at 22 n.18.) Further, "willful and wanton conduct involves conduct at least as egregious as gross negligence." *Lee*, 2015 WL 4526165, at *9 n.8.

*Yancey v. Lea*, 354 N.C. 48, 53, 550 S.E.2d 155, 158 (2001) (explaining that wantonness "connotes *intentional wrongdoing*" (quoting *Hinson v. Dawson*, 244 N.C. 23, 28 92 S.E.2d 393, 396–97 (1956))).

Plaintiff first contends that "[a]lthough part of the Army's dereliction in the case at bar was its failure to warn trail users, that omission does not 'stand[] alone,'" as "Fort Bragg actively created the hazard by allowing simultaneous trail use and firearms hunting on its property." (ECF No. 31 at 24 (second alteration in original) (quoting *Fesmire*, 9 F. App'x at 215).)

Plaintiff challenges the existence and/or sufficiency of the signs at the trail and the posting on Ft. Bragg's website related to the trail closure. This position, however, cuts against Plaintiff's argument that Ft. Bragg wantonly caused injury to Sipes. Ft. Bragg took a number of steps designed to close the trail for hunting season and provide such notice to the public. (*See* ECF Nos. 28 ¶ 12, 31-2 at 2, 31-3 at 7:14–8:19, 31-4, 31-5, 31-6 (initial discussions of safety precautions involving signage and trail closure during hunting season); ECF No. 31-21 (trail brochure that was distributed stating that "[t]he trail will be closed during peak deer hunting season"); ECF No. 31-22 at 2 (trail webpage stating that the trail "is closed during deer hunting season," "7 Oct - 1 Jan 07," and that "[n]o one may use the trail for any reason during this period"); ECF No. 28-8 ¶¶ 3–6 (declaration from Ft. Bragg contractor stating that he placed three papers onto a bulletin board at the Vass Road trailhead in 2006 that listed the rules of the trail and closures related to military training

12

exercises, firearms hunting, and "peak of rifle deer season")[7].) The fact that Ft. Bragg took these steps at all, even if they were careless or negligent in doing so, negates the requisite mental state that Ft. Bragg committed an act of wicked purpose in conscious disregard for the safety of individuals using the trail. *See McCauley*, 774 S.E.2d at 426; *see also Kelly v. United States*, No. 7:10-CV-172-FL, 2014 WL 4098943, at *3 (E.D.N.C. Aug. 18, 2014).

Moreover, in *Fesmire*, as in this case, the plaintiff argued that the United States "creat[ed] a dangerous condition and fail[ed] to warn persons on federal property of its presence." 9 F. App'x at 214. In rejecting this argument, the Fourth Circuit stated that the plaintiff had not alleged any "wrongful *act*, but at most a wrongful omission or failure to act, the failure to warn." *Id.* at 215. The court then stated, "We have found no case in North Carolina which holds that the passive conduct of a landowner is deemed to be an act performed 'intentionally with a reckless indifference to the injuries likely to result.'" *Id.* Despite Plaintiff's effort to distinguish *Fesmire*, the Court finds her arguments unpersuasive. Plaintiff has offered no evidence that Ft. Bragg *actively* recruited the general public, including Sipes, to use the trail during hunting season nor has she pointed to evidence that Ft. Bragg *actively* created the hazard that led to Sipes' death. At best, Plaintiff points to evidence of passive conduct involving Ft. Bragg's failure to properly close the trail to the public during hunting season. (*See* ECF No. 31 at 1 ("Plaintiff's grievance is that the Army, having

---

[7] Darin Burns, the contractor who provided this declaration, took photos on May 9, 2006 and on September 19, 2011, which was after the accident. Although Mr. Burns stated that the papers depicted in his September 19, 2011 photograph are the same ones depicted in the May 9, 2006 photographs, (*see* ECF No. 28-8 ¶ 8), for purposes of this opinion, the Court has considered only his statements and the photo related to the May 9, 2006 photograph since Plaintiff's evidence disputes the existence and/or legibility of the signage on the day of the incident.

13

constructed the All American Trail near an area where hunting is allowed, failed to properly close the trail during hunting season and alert trail users to the danger.").)  This is insufficient to raise a genuine issue of material fact on whether Ft. Bragg committed a wanton act.

Plaintiff next contends that the record shows that Ft. Bragg knew of the dangers associated with hunting and recreational use of the trail simultaneously and, thus, a shooting accident was likely.  (*See* ECF No. 31 at 24–26.)  Again, Plaintiff's forecast of evidence falls short of demonstrating wantonness.

In *Fesmire*, the plaintiff claimed that the United States was aware of a previous accident where a vehicle ran off the ramp and into the water, arguing that despite this knowledge, "to then remove the gate and not replace it or provide warnings of the hazardous condition ha[d] to constitute wanton conduct."  9 F. App'x at 214.  However, the Fourth Circuit declined to hold that the defendant's failure to warn of the alleged hazardous condition was wanton.  *Id.* at 215.  Unlike in *Fesmire*, in this case, it is undisputed that there has never been an incident where a hunter shot and killed a jogger on the trail at Ft. Bragg.  Further, the recreational use statute does not require that Ft. Bragg warn of any artificial or unusual hazards, even if it had actual knowledge of such hazards.  *Id.*  Such warnings would only be required if Sipes was a direct invitee.  *See* N.C. Gen. Stat. § 38A-4(a).  Plaintiff testified that she was not aware of anyone directly inviting Sipes to the trail.  (ECF No. 28-18 at 11:15-21.)  In answering the Government's request for admissions, Plaintiff denied that no one directly invited Sipes to the trail.  (ECF No. 28-17 at 3.)  The Government contends that there is no evidence that Sipes was directly invited to the trail.  (*See* ECF No. 28 at 16 n.5;

14

ECF No. 35 at 6.) In response, Plaintiff argues that "'invitee' status is a legal conclusion, not a fact," that it is "a legal term of art whose specialized meaning is far different from its normal use in other contexts," and that Plaintiff's denial in response to the Government's requests for admission creates a genuine issue of fact on this issue. (ECF No. 31 at 20–21.) It is Plaintiff's burden to provide evidence that someone invited Sipes to the trail in order for the heightened standard to apply under NCRUS, and there is no evidence that Sipes was invited by anyone to the trail. *See Johnston v. United States*, No. 1:01CV217C, 2002 WL 1554354, at *3 (W.D.N.C. July 15, 2002) ("[Plaintiff's] own testimony reveals that no employee of defendant invited her to descend the stairs."). Nor can Plaintiff claim direct invitee status under NCRUS based on advertisements, brochures, signs, or other materials that Ft. Bragg used to promote the trail as open to the public for recreational use. *See id.* at *3 n.1 (noting that the court was persuaded by the defendant's argument that "signage directing the public to a recreation area" could not confer direct invitee status because it "would defeat the stated purpose of the [recreational use] statute"); *Casas v. United States*, 19 F. Supp. 2d 1104, 1107 (C.D. Cal. 1998) (interpreting California law) ("Advertisements, brochures, promotional materials or other invitations to the general public are not express invitations to anyone in particular."). Sipes, therefore, does not qualify as a direct invitee under NCRUS.

While the record contains evidence that, before the trail opened, Ft. Bragg officials had concerns about the safety of those using the trail during hunting season, and that there was some uncertainty as to which department was responsible for the trail's maintenance, this evidence falls short of showing that Ft. Bragg knew that a jogger would be shot by a

15

hunter and, "notwithstanding that knowledge, w[as] recklessly, wantonly or intentionally indifferent to the probable result." *Starr v. Clapp*, 40 N.C. App. 142, 147–48, 252 S.E.2d 220, 223 (1979); *see Sawyer v. Food Lion, Inc.*, 144 N.C. App. 398, 400, 403, 549 S.E.2d 867, 869, 871 (2001) (holding that the defendant's failure to cover holes on the grocery store floor did not rise to the level of gross negligence even though the defendant knew of the holes). Accordingly, the Government's motion for summary judgment on this issue will be allowed.

## ORDER

IT IS THEREFORE ORDERED that the United States' Motion for Summary Judgment (ECF No. 27) is GRANTED.

IT IS FURTHER ORDERED that the United States' Motion for Leave to Exceed Page Limitation (ECF No. 34), filed contemporaneously with its Reply, is hereby GRANTED.

This, the 8th day of January, 2016.

/s/ Loretta C. Biggs
United States District Judge
